UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

TANGSHAN GANGLU IRON & STEEL
COMPANY, LTD. a foreign corporation,

    Plaintiff,

v.

MAPUCHE, LLC, a Florida limited liability
company and WEI CHEN, an individual,

    Defendants.

Case No. 0:14-cv-61093-JIC

## DECLARATION OF ZHEN ZENG DU UNDER PENALTY OF PERJURY UNDER 28 USC § 1746

1.     I, Zhen Zeng Du, am over eighteen years of age and provide this Declaration Under Penalty of Perjury based on personal knowledge.

2.     I am the Chairman of Tangshan Ganglu Iron & Steel Company, Ltd. ("Ganglu").

3.     Ganglu is a member and 80% owner of Mapuche, LLC, which is the sole member and owner of US Capital Holdings, LLC, which, in turn, is the sole member of US Capital/Fashion Mall, LLC.

4.     In 2005, I met Wei Chen ("Mr. Chen") through a friend. Mr. Chen bought the old Plantation mall with his friends in 2004 (the "Mall Properties"), and they were on a tight budget at that time.

5.     After speaking with Mr. Chen, I established Mapuche, LLC to get an investor visa so that my two children could study in the US and receive a good education. Mr. Chen used his share in the mall as collateral to borrow money from me, which accumulated to about $15,087,000.00 (interest not included) till March of 2007. Mr. Chen wasn't able to pay back the

interest or the principal balance of our loan, nor other loans he got. Mr. Chen was sued by other lenders because of his failure to repay the loans, and he was about to bankrupt. So Ganglu had to assume the responsibility of funding US Capital Holdings, LLC and US Capital/Fashion Mall, LLC in 2007, and I was told that I will have full control of the companies. Our intention in purchasing the Mall Properties was to rehab and re-develop the once high-end destination and convert it into a mixed use facility with housing, offices and shopping (the "Mall Project").

6. Because I don't speak English, I trusted Mr. Chen and had him run the companies.

7. To complete the purchase of the Mall Properties, from May 2007 to the end of 2011, we invested approximately $91,643,000.00 in the company.

8. In order to finance the re-development of the Mall Properties and the completion of the Mall Project, on January 21, 2012, Bo Rui Investment Pte, Ltd. entered into a Loan Contract with Mapuche, LLC, in which Bo Rui Investment Pte, Ltd. made a loan for $50,000,000.00 to Mapuche, LLC. Tangshan Ganglu Iron & Steel Company, Ltd. agreed to be the guarantor of the $50,000,000.00 loan to Mapuche, LLC. *See* Loan Contract and Supplemental Agreement (the "Loan Contract"), together with translations, attached hereto as Composite Exhibit "1".

9. Under the Loan Contract, the first installment of $50,000,000.00 loan to Mapuche, LLC was due in April 2013.

10. As a result, in mid-April, 2014, I traveled to Florida (a) to inspect the Mall Properties and see the progress of the construction of the Mall Project (because the money from the loan was supposed to be used for the construction of the Mall Project), and (b) to collect the money due under the Loan Contract.

2

11. In furtherance of my objectives, on April 20, 2014, I had a dinner meeting with Mr. Chen. During dinner on April 20, 2014, I asked Mr. Chen about the status of the accounts.

12. Mr. Chen advised me that there was $12,000,000.00 in the account.

13. During dinner, I requested to meet with the accountant and also requested to inspect the accounting records of Mapuche, LLC, US Capital Holdings, LLC and US Capital/Fashion Mall, LLC so that I could see for myself the status of the accounts.

14. On April 21, 2014, I went to the office of Mapuche, LLC, US Capital Holdings, LLC and US Capital/Fashion Mall, LLC to meet with the accountant. Upon arriving at Mapuche's offices on April 21, 2014, I was told by Mr. Chen that the accountant was on vacation for one week and that we could not inspect the accounting records.

15. On April 21, 2014 at 7:40 p.m., I received a text message from a friend as follows: *"Old Chen went to the office to make up fake paper."* See Text Message, together with translation, attached hereto as Exhibit "2" (emphasis added).

16. Subsequently on or about April 29, 2014, Jianan Du, on my behalf, went to the office of Mapuche, LLC, US Capital Holdings, LLC and US Capital/Fashion Mall, LLC and met with the accountant and reviewed some accounting records, which showed that there was only $1,300,000.00 in the account.

17. On Friday, May 2, 2014, Jianan Du, on my behalf, sent an e-mail requesting that a formal meeting with all employees be held on Monday, May 5, 2014. *See* E-Mail Chain dated May 2-3, 2014, attached hereto as Exhibit "3".

18. However on Sunday, May 4, 2014, Jianan Du received an e-mail from one of the employees, who forwarded an e-mail from Grace He ("Mrs. He"), on behalf of Mr. Chen. The e-mail from Mrs. He stated that nine employees were being instructed to work from home starting

3

Monday, May 5, 2014, due to renovations in the office. *See* Exhibit "3".

19. On Monday, May 5, 2014, Jianan Du, on my behalf, went to the office of Mapuche, LLC, US Capital Holdings, LLC and US Capital/Fashion Mall, LLC. He was greeted by Mrs. He, three security guards and corporate attorney, Pamela Anselmo of Becker & Poliakoff, who stated Jianan Du could not call a meeting and could not enter the building.

20. I am informed that there is supposed to be a closing on June 2, 2014, on the purchase of the property located at 311 North University Drive, Plantation, Florida (the "Sheraton Property"). The $1,300,000.00 deposit (the email from Mr.Chen on May 3rd says it's $1,800,000.00) for the purchase of the Sheraton Property was paid by Mapuche, LLC. However, Mr. Chen is attempting to have the Sheraton Property transferred to WCH Hospitality, LLC, a company owned and controlled by Mr. Chen.

21. Unless a custodian is appointed before the June 2, 2014, the Sheraton Property could be wrongly transferred to WCH Hospitality, LLC.

22. Ganglu therefore respectfully asks the Court to immediately appoint a custodian for Mapuche, LLC so that the custodian can immediately inspect the books and records of Mapuche, LLC to decide (a) whether the purchase of the Sheraton Property makes sense; (b) whether Mapuche, LLC has the money to pay for the Sheraton Property; or (c) whether Mapuche, LLC needs additional time to close the transaction.

23. Also, Ganglu respectfully asks the Court to immediately appoint a custodian for Mapuche, LLC because in order to complete the Mall Project another $200,000,000.00 will have to be invested. Mr. Chen does not have access to that kind of money. However, I do, as does Ganglu. But, in order for Ganglu to go out and look for investors to complete the Mall Project, we need to know that we have sound, honest management in place.

4

24. Lastly, we need a custodian in place to conduct an accounting to determine what has happened to the $50,000,000.00 loan to Mapuche, LLC and the all other funds that I invested.

25. I declare under penalty of perjury that the foregoing is true and correct.

By: _____
Zhen Zeng Du
Chairman
Tangshan Ganglu Iron & Steel Company, Ltd.